# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.   NO. 3:12-cr-64

AKILAH SHABAZZ

(JUDGE CAPUTO)

## MEMORANDUM

Currently before the Court are four pre-trial motions by Defendant Akilah Shabazz. Following a traffic stop of Shabazz's rental car on June 25, 2011, a search warrant was obtained and forged checks and fake identifications were discovered within the vehicle. Shabazz was ultimately charged with federal crimes for, *inter alia*, aggravated identify theft and fictitious obligations.  First, Shabazz seeks to suppress the evidence against him based on the representations made in the affidavit of probable case, and has made a sufficient showing to merit a *Franks* hearing on this matter.  Similarly, this hearing will also address Shabazz's motion to compel videotape of the incident, which the United States represents has been lost.  However, Shabazz's motion to preclude evidence outside the scope of the indictment will be denied as moot since the scope of the indictment has since been expanded, and his motion for a lineup will also be rejected as ther will be no in-court identification requiring such a process.

## BACKGROUND

On June 25, 2011, Defendant Akilah Shabazz was a passenger in a vehicle stopped for speeding by Pennsylvania State Police Corporal Michael T. Carroll.  Kenneth F. Thompson was driving the vehicle and Defendant Akilah O. Shabazz was in the back seat.

Corporal Carroll testified in his Affidavit of Probable Cause that he smelled marijuana from inside the vehicle, and he summoned a canine unit to further investigate. Shabazz was removed from the vehicle, and the right rear door was left open. Although consent to search the vehicle was denied, the canine entered the vehicle through the open door while executing an outside air sniff. The dog indicated a positive hit for narcotics and a search warrant was obtained. Although no drugs were ultimately discovered, twelve fictitious driver's licenses were found with Shabazz's apparent photograph as well as counterfeit business and personal checks.

The matter was referred to the United States Secret Service. Special Agent David Baker of the United States Secret Service presented an affidavit of probable cause in support of the criminal complaint, and Magistrate Judge Blewitt issued a warrant for Shabazz's arrest on November 1, 2011. On March 6, 2012, Shabazz was indicted with Aggravated Identity Theft under 18 U.S.C. § 1028A(a)(1); Fraud and Related Activity in Connection with Identification Documents under 18 U.S.C. § 1028(a)(3); Fictitious Obligations under 18 U.S.C. § 514(a)(1); and Conspiracy to commit the aforementioned crimes under 18 U.S.C. § 371. (Doc. 22.) Shabazz pleaded not guilty to all counts on March 15, 2012.

A Superseding Indictment was filed on June 12, 2012 for the same four crimes, but expanding the time period to on or about June 1, 2011 through June 30, 2011 and adding additional counts. Specifically, the Superceding Indictment charged Shabazz as a co-conspirator in possessing twenty-three (23) false identification documents, using the social security numbers of ten (10) individuals to unlawfully use such false identification documents, and possessing twelve (12) counterfeit business and personal checks. (Superceding

Indictment at ¶¶ 5-7, Doc. 56.)  The Grand Jury also charged Shabazz with nine counts of aggravated identity theft for using the identification of nine other individuals, fraud and related activity in connection with identification documents, and seven counts of fictitious obligations for possession with intent to negotiate seven counterfeit checks.  (*Id.* at 8-13.)  As above, Shabazz pleaded not guilty to all counts.  (Doc. 60.)

In April of 2011, Shabazz filed four motions concerning the evidence sought to be introduced against him in this matter.  These four motions are now ripe for the Court's review and will be considered below.

**I. Motion to Suppress Pursuant to Fed. R. Crim. P. 12(b)(3)(C) (Doc. 32)**

Shabazz seeks to suppress the fruits of an allegedly illegal search of his rental car and requests a *Franks* hearing.  In particular, as the probable cause for the warrant was largely based on a dog sniff, Shabazz argues that "[t]he affidavit of probable cause in support of the search warrant intentionally or recklessly omits reference to the K-9 actually entering the inside of the rental vehicle to conduct two searches for suspected narcotics." (Pet'r's Br. at 6, Doc. 33.)  Similarly, Shabazz argues that it would not be possible for the dog to have alerted a detection of drugs as none were ever found.  (*Id.*)  As such, Shabazz moves to have all evidence found within the car suppressed.

    **A.**    **Standard of Review**

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things

3

to be seized." U.S. Const. amend IV. Such probable cause calls upon the issuing magistrate "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In reviewing a determination of probable cause a district court looks only to whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* And, when evaluating the supporting affidavit to a search warrant, a court must view it "in a common sense and nontechnical manner"–focusing "on what the affidavit includes, rather than on what it does *not* include." *United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997) (citing *United States v. Conley*, 4 F.3d 1200, 1206, 1208 (3d Cir. 1993)).

While there is a general presumption that an affidavit of probable cause is valid, following the issuance of an *ex parte* warrant, criminal defendants have the right to challenge the truthfulness of the factual statements contained within the affidavit. *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006). As a preliminary matter, before any hearing is held on the issue, there must be "a 'substantial preliminary showing' that the affidavit contained a false statement, which was made knowingly or with reckless disregard for the truth, which is material to the finding of probable cause." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Reckless disregard for the truth also includes omissions where "an officer recklessly omits facts that any reasonable person would want to know . . . [or] has obvious reasons to doubt the truth of what he or she is asserting." *Id.* at 383 (quoting *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000)). Yet, even if such false statements are uncovered, a court will then "excise the offending inaccuracies and insert the facts recklessly omitted,

and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000); *United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993) ("a defendant must show . . . that there would have been no probable cause but for the incorrect statement."). If probable cause is then found lacking, a probable cause hearing will be held. *Franks*, 438 U.S. at 156.

### B.     The Affidavit

Corporal Michael T. Carroll's Affidavit attached to the Search Warrant (Pet'r's Ex. A) contains the following representations. At the relevant time, Corporal Carroll was the Vice-Highway Interdiction/PRT/Intelligence Units Supervisor at Troop "R" in Dunmore, Pennsylvania. On June 25, 2011, while monitoring traffic on Interstate 84 near Exit 1 in Dunmore Bourough, Pennsylvania, Carroll observed a white 2011 Chevrolet Traverse traveling at 74 m.p.h. in a 55 m.p.h. zone. Carroll stopped the vehicle after it turned on Interstate 81 northbound near mile marker 188. The driver, Kenneth Thompson, was alone in the front and Defendant Shabazz was alone in the back. Thompson explained that they were driving to Pittsburgh, to which Carroll responded that they were headed in the wrong direction. Thompson appeared nervous, exhibiting trembling hands and short breaths.

A check of Thompson's driver's licence revealed that it was suspended and that there was a felony warrant for his arrest in the state of Arkansas. The car was rented in Shabazz's name, and although unconfirmed, the rental agreement suggested that the rental period had expired six days earlier. Thompson was removed from the vehicle and given a pat down for officer safety. Carroll approached Shabazz's window, obtained his driver's license, and detected an odor of marijuana emanating from the vehicle. Carroll returned to his patrol car, requested a canine unit to the scene, and ran a check of Shabazz's driver's licence which

5

indicated that he was wanted in Massachusetts for larceny. Shabazz was also directed to exit the vehicle and was patted down, but did not close his door when he exited.

Trooper Powell then arrived with his dog "Johnny," "a canine who is trained in narcotics detection." (Aff. at 2.) Shabazz refused to consent to a search of the vehicle and Johnny completed "a clean air scan of the vehicle." (*Id.*) However, when Johnny was near the rear of the vehicle, he "ran to the open passenger rear door of the Chevrolet" and positively indicated for narcotics. (*Id.*) The two occupants were then both placed in handcuffs and it was explained that Corporal Carroll would be applying for a search warrant. The two occupants were transported separately back to the State Police barracks. Carroll remained with the vehicle which was eventually towed back to the barracks and entered into evidence. Shabazz and Thompson did not await for Carroll to return with their driver's licenses which were locked inside the Chevrolet.

### C.    Analysis as to Probable Cause

The implementation of "a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). Specifically, a dog sniff of the exterior of an automobile "does not rise to the level of a constitutionally cognizable infringement." *Id*; *see also United States v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010) (emphasis supplied) (regarding as well-established that "an *exterior* canine sniff of a car during a lawful traffic stop does *not* amount to a 'search' under the Fourth Amendment.").

The United States concedes that the narcotics dog penetrated the vehicle, but argues that "a narcotic dog's instinctive action of jumping into the car does not violation the Fourth

Amendment." (Resp't's Br. at 6-7, Doc. 48.)

In *United States v. Hutchinson*, the Honorable Judge Kane addressed exactly this issue and determined that "a canine sniff that migrates from outside a car or other container to the interior does not constitute a violation of the Fourth Amendment, provided that the canine makes entry into the suspect vehicle of its own initiative and is neither encouraged into nor placed in the vehicle by a law enforcement officer." 471 F. Supp. 2d 497, 505 (M.D. Pa. 2007) *aff'd*, 316 F. App'x 137 (3d Cir. 2009). However, such "sniffs may become constitutionally infirm in the event that the interior sniff is accomplished or facilitated by the officer-handler." *Id.* at 508. Further, in applying the "plain smell doctrine"–an analogy to the plain view doctrine as analogized to dog sniffs–"it would be unlawful for officers to open or otherwise manipulate containers in order to determine whether odors of contraband might thereby be more easily detected." *Id.* at 510. The Third Circuit, in considering this issue, has explicitly endorsed the approach set out in *Hutchinson*. *United States v. Pierce*, 622 F.3d 209, 213 (3d Cir. 2010).

In the instant case, the Affidavit is unclear on whether the canine received encouragement to investigate the open vehicle. It merely sates that when the dog was "near the rear of the vehicle, 'Johnny' ran to the open passenger rear door of the Chevrolet." (Aff. at 2.) This representation potentially omits pertinent information about the specific handling of the dog which is highly pertinent as Shabazz represents that the officers "facilitated and encouraged 'Johnny' to enter the rear passenger door of the rental vehicle to conduct a search by sniffing the interior of the rental vehicle on two separate occasions."[1] (Pet'r's Br.

---

[1] Shabazz also states in his brief that the canine's handler merely "permitted 'Johnny' to enter the rear of the rental vehicle on two separate occasions." (Pet'r's Br. at 8, Doc.

7

at 6, Doc. 33.) It is additionally problematic that Shabazz attests that the door was left open by the officer, and not by him, which would suggest additional officer intervention in violation of the plain smell doctrine. *See Hutchinson*, 471 F. Supp. 2d at 510 (noting that a dog sniff would also be unlawful where an officer "opened the car to enhance the dog's ability to smell odors otherwise trapped in the vehicle"). While the Affidavit expresses that Shabazz "did not close the right rear door when he exited the vehicle" (Aff. at 2), the Defendant argues that "law enforcement opened the rear passenger door . . . and left the rear passenger door opened" (Pet'r's Br. at 6, Doc. 33).

Whether the door was kept open by Shabazz or by Corporal Carroll is a crucial detail that Shabazz contents was misrepresented in the Affidavit of Probable Cause. Similarly, the Affidavit is unclear as to any encouragement the canine might have received to enter the vehicle and Shabazz contends that he was actively encouraged to venture inside. Therefore, Corporal Carroll's Affidavit is potentially false or incomplete in aspects that would have a very substantial effect on the probable cause contained within the affidavit. In fact, these two issues each have the potential to fatally undermine the probable cause of the Affidavit as the only other facts included in the Affidavit suggesting the presence of contraband in the vehicle were the nervousness of the occupants and the smell of marijuana, which could just as well indicate the consumption of marijuana rather than its presence. Therefore, as these statements were necessary to the existence of probable cause, and there has been a substantial preliminary showing that at least one of them may have been

---

33.) Such passive permission would not be a violation because, as explained above, the Fourth Amendment is only impinged when a dog receives active encouragement to enter a vehicle.

8

made with reckless disregard for the truth, a *Franks* hearing will be held as to the sufficiency of the Affidavit of Probable Cause.

### D.    Canine Reliability

Defendant Shabazz argues that the Affidavit contains insufficient indicia of the canine's reliability to support probable cause.  In particular, he avers that the Affidavit fails to include information as to the dog's "track record or whether he ever gave a false indication for the presence of narcotics; whether he ever failed a certification test; whether he was ever used in a drug investigation or what, if any, his prior percentage of accuracy entails." (Pet'r's Br. at 10, Doc. 33.)

The law does not require such detail.  In fact, the Third Circuit has declined to adopt a bright-line rule precluding reliance on a dog sniff for probable cause "absent specific facts in the warrant establishing a dog's reliability." *United States v. Rivera*, 347 F. App'x 833, 837 (3d Cir. 2009).  Furthermore, since "[t]he purpose of the warrant requirement is not to deprive completely the Government of reasonable inferences . . . [t]he bail commissioner is entitled to make all reasonable inferences when reviewing an affidavit for a 'substantial basis' to find probable cause."  *Id.* at 838 (citation omitted).  In *United States v. Berry*, the defendant presented a similar argument that a probable cause affidavit was lacking as it failed to present the dog's reliability and credibility.  90 F.3d 148, 153 (6th Cir. 1996).  *Berry*, however, found that references to the dog as a "drug sniffing or drug detecting dog" and statements that the dog was trained and qualified to detect drugs reasonably implied reliability and rejected that argument.  *Id.*

In support of this position, Shabazz cites *United States v. $10,700.00 in U.S.*

*Currency*. 258 F.3d 215 (3d Cir. 2001).  This case is unhelpful[2] to his position as it concerned "the extent to which a positive canine alert on a bundle of money is probative in assessing the government's probable cause to forfeit that currency." *Id.* at 229-30; *Rivera*, 347 F. App'x at 838 (finding *$10,700 in U.S. Currency* did not pertain to "a magistrate's ability to make reasonable inferences about [a] dog's training").  Instead, here, the Affidavit explained that "Johnny" was "a canine who is trained in narcotics detection."  (Aff. at 2.)  Although not a highly specific resume of the dog's exact qualifications, the reasonable inference is that Johnny is a qualified drug detection dog.  Thus, from the face of the affidavit, I find that the magistrate reasonably inferred that "Johnny" was a fully-qualified narcotics-seeking dog.

### E.    Inevitable Discovery Doctrine

Even where the exclusionary rule would work to suppress evidence, in situations where "the government can prove that the evidence would have been obtained inevitably and, therefore, would have been admitted regardless of any overreaching by the police, there is no rational basis to keep that evidence from the jury in order to ensure the fairness of the trial proceedings."  *Nix v. Williams*, 467 U.S. 431, 447 (1984).  This is referred to as the inevitable discovery doctrine.

The United States argues that the inevitable discovery rule applies here because "Corporal Carroll was not going to allow the defendant to continue on in a vehicle with an expired out-of-state rental agreement . . . and in compliance with Pennsylvania State Police

---

[2] To the extent the Defendant cites to *Harris v. State*, this case is also unhelpful.  71 So. 3d 756, 764 (Fla. 2011), *as revised on denial of reh'g* (Sept. 22, 2011), *cert. granted*, 132 S. Ct. 1796 (2012).  That case considered the showing which must be made before a trial court to establish probable cause for a *warantless* search predicated on a dog sniff, holding that the state must "must present all records and evidence that are necessary to allow the trial court to evaluate the reliability of the dog."  *Id.* at 771.

protocol, the vehicle would have been inventoried and the contraband items inside would have been inevitably discovered." (Resp't's Br. at 10, Doc. 48.) This may be the case and the United States will have the opportunity to pursue this argument at the later *Franks* hearing. However, from the facts before me today, it is unclear whether the rental agreement was actually expired. The Respondent's Brief relies on the Affidavit which only states that the rental agreement "looks to have expired" approximately six days earlier. (Aff. at 2.) It is further unclear to me what exactly the Pennsylvania State Police protocol would entail, and the Defendant presents a plausible argument that such protocol would have allowed him–as a non-arrested individual–to remove his personal items from the rental car before it was impounded. (Pet'r's Reply Br. at 6, Doc. 55.) In other words, I am unable to determine from the facts before me whether this doctrine applies, and I will defer this determination until further evidence is provided.

**II.    Motion in Limine Pursuant to Fed. R. Evid. 401, 402, and 403 (Doc. 36)**

This Motion seeks to exclude evidence of crimes falling outside of the indictment's time frame, which was limited on its face to crimes allegedly committed "[o]n or about June 25, 2011." (Incitement at 1, Doc. 22.) As noted, these crimes included conspiracy, aggravated identity theft, fraud and related activity in connection with identification documents, and fictitious obligations. In particular, Shabazz represents that the United States may seek to offer evidence "of purported financial transactions at various Wal-Marts throughout the Eastern District and Middle District of Pennsylvania occurring prior to June 25, 2011" as well as "evidence acquired as a result of the arrest and detention of the Defendant in the District of Arizona." (Pet'r's Br. at 5-6, Doc. 37.) Any such evidence, Shabazz contends, should be excluded at trial as extrinsic, irrelevant, inadmissible, and

prejudicial.  However, setting aside the merits of this Motion, I find it is moot in light of the Superceding Indictment filed on June 12, 2012 which charged Shabazz with crimes "[b]eginning on or about June 1, 2011 and continuing through June 30, 2011, in the Middle District of Pennsylvania, and elsewhere."  (Superseding Indictment at 1, Doc. 56.)  As this enlargement appears to void the Defendant's arguments that the government is limited to evidence pertaining to June 25, 2011, this Motion will be denied without prejudice as moot.

**III.    Motion to Compel Discovery Pursuant to Fed. R. Crim. P. 16(d)(2)(A) (Doc. 38)**

Defendant moves to compel access to a video recording of the June 25, 2011 traffic stop referenced throughout this Memorandum.  The Affidavit specifically states that Corporal Carroll's cruiser was equipped with a digital video recorder and that Carroll even explained to Shabazz during the stop that he was being recorded at the time.  (Aff. at 1-2.)  Although Shabazz requested a copy of this videotape from the Pennsylvania State Police on April 4, 2011, none has been produced to date.

Shabazz contends that he is entitled to this evidence pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  "Under *Brady*, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment."  *Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (citing *Brady*, 373 U.S. at 87).

The United States represents that although Corporal Carroll requested that the video be preserved, "that it was either not preserved or not retrievable."  (Resp't's Br. at 5, Doc. 52.)  The United States cannot say exactly why the video was lost, but opines that it was either due to a technical problem or due to the hard drive being wiped prior to Corporal

12

Carroll's request. (*Id.* at 6.) Of course, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). As such, the United States is adamant that there was no bad faith in this loss and requests the opportunity to present witnesses to testify as much. (Resp't's Br. at 6.) And, the Defendant requests the opportunity to examine such witnesses. As such, this Motion will be held in abeyance pending an opportunity to examine witnesses on the matter.

**IV.     Motion for Lineup And/Or Suppression of Evidence Based Upon Due Process (Doc. 40)**

Shabazz argues that any attempt by the United States to suggest that he utilized false identification to cash checks would be "an unconstitutionally suggestive identification." (Mot. at ¶ 8, Doc. 40.) First, Shabazz avers, without explanation, that introducing evidence at trial would create a due process violation. Presumably, this stems from that Shabazz, at the time of this Motion, was only charged with possessing unlawful items on June 25, 2011. As noted, these charges were amended to include a broader range of dates. Therefore, this Motion will be denied without prejudice insofar as it is predicated generally on due process.

Further, Shabazz more specifically "asserts that the Government either has no identification of the Defendant related to the cashing of checks or an unconstitutionally suggestive identification." (Pet'r's Br. at 3, Doc. 41.) Shabazz requests that the evidence be suppressed, or that the Respondent be ordered to perform a constitutionally valid lineup. The United States clarifies the thrust of this motion, stating that it has evidence that Shabazz utilized fraudulent identifications identical to those seized to cash counterfeit checks at Walmarts in the two weeks before the June 25, 2012 traffic stop. (Rep't's Br. at 1, Doc. 50.)

The United States further explains that no Walmart employees will be called into court to identify Shabazz, but will instead introduce evidence consisting of "numerous names and driver licenses." (*Id.* at 2.)  While expressing no opinion on the admissibility of those particular items, it appears that Shabazz is attempting to preclude an unconstitutionally suggestive in-court identification as the authority cited by Shabazz pertains to eyewitness identification and lineups.  However, as the United States has represented that there will be no such identifications, the instant Motion would be merely advisory and will be denied.

## **CONCLUSION**

Because there are potentially misstatements and/or omissions in the Affidavit of Probable Cause that would have a material affect on the sufficiency of the search warrant, a *Franks* hearing will be held to further evaluate these assertions.  Similarly, this hearing will also provide an opportunity to hear testimony on Shabazz's motion to compel the videotape of the stop and the United States's contention that it is lost without fault.  However, Shabazz's motion for a lineup will be denied as inapplicable to the instant case and his motion to exclude evidence will be denied in light of the expanded Superceding Indictment.  An appropriate order follows.

| | |
|---|---|
| July 12, 2012<br>Date | /s/ A. Richard Caputo<br>A. Richard Caputo<br>United States District Judge |