# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | NO. 3:12-cr-64 |
| AKILAH SHABAZZ | (JUDGE CAPUTO) |

## MEMORANDUM

Currently before the Court are two pre-trial motions: Defendant Akilah Shabazz's *pro se* Motion to Suppress Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C) (Doc. 87) and the United States of America's Motion to Admit Evidence Under Federal Rule of Evidence 404(b) (Doc. 72). Because the seizure of certain items from Shabazz's rental vehicle are justified under the plain view doctrine but others are not, Shabazz's Motion to Suppress will be granted in part and denied in part. Because the evidence of Shabazz's prior bad acts is relevant, is offered for several proper purposes, and its probative value is not outweighed by the danger of unfair prejudice to Shabazz, the government's Motion to Admit Evidence Under Federal Rule of Evidence 404(b) will be granted.

## BACKGROUND

On June 25, 2011, Defendant Akilah Shabazz was a passenger in a rental vehicle stopped for speeding by Pennsylvania State Police Corporal Michael T. Carroll. Kenneth F. Thompson was driving the vehicle and Shabazz was in the back seat. Corporal Carroll testified in his Affidavit of Probable Cause that he smelled marijuana from inside the vehicle, and he summoned a canine unit to further investigate. Shabazz was removed from the vehicle, and the right rear door was left open. Although consent to search the vehicle was

denied, the canine entered the vehicle through the open door while executing an outside air sniff. The dog indicated a positive hit for narcotics and a search warrant was obtained. The warrant specified that the following items were to be searched for: drugs and drug paraphernalia, illegal proceeds and fruits of crime from narcotics activities, documentation of illegal narcotics activities, and weapons. Although no drugs were ultimately discovered, twelve (12) fictitious driver's licenses were found with Shabazz's apparent photograph as well as counterfeit business and personal checks.

The matter was referred to the United States Secret Service. Secret Service Special Agent David Baker presented an affidavit of probable cause in support of the criminal complaint, and Magistrate Judge Blewitt issued a warrant for Shabazz's arrest on November 1, 2011. On March 6, 2012, Shabazz was indicted with Aggravated Identity Theft under 18 U.S.C. § 1028A(a)(1); Fraud and Related Activity in Connection with Identification Documents under 18 U.S.C. § 1028(a)(3); Fictitious Obligations under 18 U.S.C. § 514(a)(1); and Conspiracy to commit the aforementioned crimes under 18 U.S.C. § 371. (Doc. 22.) Shabazz pleaded not guilty to all counts on March 15, 2012.

A Superseding Indictment was filed on June 12, 2012 for the same four crimes, but expanding the time period to on or about June 1, 2011 through June 30, 2011 and adding additional counts. Specifically, the Superseding Indictment charged Shabazz as a co-conspirator in possessing twenty-three (23) false identification documents, using the social security numbers of ten (10) individuals to unlawfully use such false identification documents, and possessing twelve (12) counterfeit business and personal checks. (Superseding Indictment at ¶¶ 5-7, Doc. 56.) The Grand Jury also charged Shabazz with nine counts of aggravated identity theft for using the identification of nine other individuals, fraud and

related activity in connection with identification documents, and seven counts of fictitious obligations for possession with intent to negotiate seven counterfeit checks. (*Id.* at ¶¶ 8-13.) As above, Shabazz pleaded not guilty to all counts. (Doc. 60.)

On August 29, 2012, the government filed its Motion to Admit Evidence Under Federal Rule of Evidence 404(b). (Doc. 72.) In the motion, the government seeks to admit evidence of Shabazz's prior bad acts—prior instances where Shabazz engaged in conduct identical to the criminal conduct he is presently charged with—because such evidence is probative of Shabazz's knowledge, intent, and absence of mistake. Shabazz argues that this evidence should be excluded, as it would be highly prejudicial against him.

On September 12, 2012, Shabazz filed a *pro se* Motion to Suppress Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C). (Doc. 87.) He argues that the evidence against him should be suppressed because he was subjected to an unreasonable search and seizure due to a pretextual traffic stop. He also seeks to suppress the evidence against him on the grounds that the items seized from his rental vehicle were not mentioned in the search warrant and were seized without a second warrant particularly describing them. These motions are now ripe for the Court's review and will be considered below.

**ANALYSIS**

**I. Shabazz's Motion to Suppress Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C)**

    **A.    Validity of the Traffic Stop**

Shabazz seeks to suppress the fruits of an allegedly illegal search of his rental vehicle on the grounds that the initial traffic stop was pretextual. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and

3

effects, against unreasonable searches and seizures . . . ." U.S. Const. amend IV. Because a traffic stop constitutes a seizure, it must be deemed reasonable to avoid violating the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 258 (2007); *United States v. Mosley*, 454 F.3d 249, 253–54 (3d Cir. 2006). To be consistent with the Fourth Amendment, an officer need only have a reasonable, articulable suspicion that a vehicle has committed criminal activity to make a traffic stop. *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006). Any "technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *Mosley*, 454 F.3d at 252. The reasonable suspicion standard requires only a "minimal level of objective justification," *Delfin-Colina*, 464 F.3d at 396, when looking at the totality of the circumstances as they were available to the officer prior to the stop. *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006). In determining whether the reasonable suspicion standard has been met, deference should be given to an officer's knowledge "of the nature and nuances of the type of criminal activity." *United States v. Givan*, 320 F.3d 452, 458 (3d. Cir. 2003).

Corporal Carroll's Affidavit of Probable Cause attached to the Search Warrant (Doc. 32, Ex. A) contains the following representations. At the relevant time, Corporal Carroll was the Vice-Highway Interdiction/PRT/Intelligence Units Supervisor for the Pennsylvania State Police at Troop "R" in Dunmore, Pennsylvania. On June 25, 2011, while monitoring traffic on Interstate 84 near Exit 1 in Dunmore Bourough, Pennsylvania, Carroll observed a white 2011 Chevrolet Traverse traveling at 74 m.p.h. in a 55 m.p.h. zone. Carroll stopped the vehicle after it turned on Interstate 81 northbound near mile marker 188. The driver, Kenneth Thompson, was alone in the front and Shabazz was alone in the back.

The Court finds that Corporal Carroll's observation of the vehicle containing Thompson and Shabazz traveling nineteen (19) miles per hour over the posted speed limit supports a reasonable suspicion that the driver was speeding in violation of the Pennsylvania Motor Vehicle Code. It is of no moment that neither Thompson nor Shabazz were cited by Corporal Carroll for the speeding violation. Because the vehicle was stopped on the reasonable, articulable suspicion that a traffic law was being violated, the traffic stop was lawful. Therefore, Defendant's suppression motion will not be granted on this ground.

**B.     Items Seized but not Particularized in Search Warrant**

Shabazz also challenges the seizure of several items not identified within the four corners of the search warrant executed on his rental vehicle. The Fourth Amendment requires that a warrant particularly describe the items to be seized. *Massachusetts v. Snyder*, 468 U.S. 981, 988 n. 5 (1984). The purpose of the particularity requirement is not only to prevent general searches, but also to "assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004). In this case, Corporal Carroll and other State Police Troopers seized items not identified in the warrant, namely: (1) twenty-three (23) fictitious driver's licenses, twelve (12) of which bore Shabazz's photograph with different names purporting to be from five different states; (2) twelve (12) counterfeit business and personal checks made out to individuals named on the licenses; (3) six (6) cell phones; (4) a laptop computer; and (5) a wireless internet router. (See Doc. 87.) Except for the wireless router and two (2) fictitious licenses with Thompson's picture, the items were found in an open computer bag in the back seat of the vehicle. (Tr. of Carroll

5

Test., Doc. 71 at 33, 46-47.)

The plain view exception to the Fourth Amendment allows "officers to seize incriminating evidence in plain view during the course of a lawful search because such a seizure 'does not involve an invasion of privacy.'" *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (quoting *Horton v. California*, 496 U.S. 128, 141 (1990)); *see also Texas v. Brown*, 460 U.S. 730, 738-39 (1983) (finding that where police have lawful access to an area, the "plain view" doctrine allows the immediate seizure of suspicious objects). A plain view seizure must satisfy three requirements before the evidence may be admitted:

> First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself.

*Id.* (internal quotations and citations omitted). As Shabazz's rental vehicle was searched pursuant to a valid warrant listing the vehicle as the place to be searched,[1] the first and third requirements are satisfied.

The Third Circuit has stated that in the context of a plain view seizure, the incriminatory character of the item sought to be seized must be "'immediately apparent'" at the moment preceding the seizure." *United States v. Bernish*, 5 F.3d 20, 25 (3d Cir. 1993) (quoting *Brown*, 460 U.S. at 741). The seizure of the fictitious drivers licenses, counterfeit checks made out to individuals named on the licenses, and laptop computer was justified at the time of search because the incriminating nature of those items was immediately

---

[1] This Court has previously found that Corporal Carroll's Affidavit was sufficient to support probable cause for the search warrant. (Mem. of Aug. 14, 2012, Doc. 68.) Corporal Carroll applied for, received, and, with the assistance of fellow State Police Troopers, executed the warrant on June 26, 2011, the day after stopping Shabazz's rental vehicle. (Tr. of Carroll Test., Doc. 71 at 31-32.)

6

apparent to Corporal Carroll. He testified that the counterfeit checks appeared to be made through the computer. (Doc. 71 at 33.) He also testified that the discovery of the licenses, checks, and laptop, especially in light of Thompson and Shabazz's outstanding warrants for forgery and theft, respectively, led him to contact federal authorities. (*Id.*) In contrast, seizure of the wireless router and cell phones was not justified at the time of the search because it is unclear whether these items are incriminating.

Therefore, Shabazz's motion to suppress will be granted in part and denied in part. Discovery of the six (6) cell phones and wireless internet router shall be suppressed, but the twenty-three (23) fictitious driver's licenses, twelve (12) counterfeit checks, and laptop computer are admissible at trial.

**II. United States' Motion to Admit Evidence Under Fed. R. Evid. 404(b)**

The government moves to admit evidence of Shabazz's prior bad acts under Federal Rule of Evidence 404(b). The evidence involves prior instances of Shabazz engaging in conduct identical to the criminal conduct he is presently charged with. Specifically, these bad acts include: (1) uttering a forged payroll check issued in a name other than his own at a Walmart in Hudson, Massachusetts on November 13, 2009; (2) uttering two forged payroll checks in a name other than his own at a Walmart in Oxford, Massachusetts on both January 14, 2010 and January 29, 2010; and (3) possessing fifteen (15) fraudulent identification cards and twenty-eight (28) counterfeit payroll checks in a rental vehicle in Mesa, Arizona on January 22, 2012. (Doc. 72 at 2-4.)

Rule 404(b) permits the admission of evidence of other crimes, wrongs or acts for certain enumerated purposes, provided that, upon request by the accused, the government shall provide reasonable notice in advance of trial of the general nature of

any such evidence it intends to introduce at trial. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). These other acts can occur both prior to and subsequent to the accused's arrest or indictment. *United States v. Bergin*, 682 F.3d 261, 281 n.5 (3d Cir. 2012).

In the Third Circuit, courts employ the following test to evaluate the admissibility of evidence under Rule 404(b): (1) the evidence must be relevant under Rule 401; (2) it must have a proper purpose under Rule 404(b); (3) its probative value must not be substantially outweighed by the danger of unfair prejudice under Rule 403; and (4) the Court must charge the jury to consider the evidence only for the limited purpose for which it is admitted. *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). Because Rule 404(b) is a rule of inclusion, *United States v. DeMuro*, 677 F.3d 550, 563 (3d Cir. 2012), "the burden on the government is not onerous.*" United States v. Sampson*, 980 F.2d 883, 888 (3d Cir. 1992).

### A. Relevance

Under Federal Rule of Evidence 401, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. This definition is "very broad" and "does not raise a high standard." *Gibson v.*

8

*Mayor & Council of Wilmington,* 355 F.3d 215, 232 (3d Cir.2004) (internal citations omitted). In assessing whether the government's proffered evidence of Shabazz's prior bad acts is relevant, we consider the charges brought against Shabazz.

Shabazz has been charged with fraud and related activity in connection with identification documents under 18 U.S.C. § 1028(a)(3). Section 1028(a)(3) makes it unlawful for any person to "knowingly possess[ ] with intent to use unlawfully or transfer unlawfully five or more . . . false identification documents" if the possession is in or affects interstate or foreign commerce. A "false identification document" is:

> a document of a type intended or commonly accepted for the purposes of identification of individuals that –
>
> (A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit; and
>
> (B) appears to be issued by or under the authority of the United States Government, a State . . . .

18 U.S.C. § 1028(d)(4).

He has also been charged with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), which makes it unlawful for any person to, "during and in relation to any felony violation enumerated in subsection (c) [which includes fraud and related activity in connection with identification documents], knowingly transfer[ ], possess[ ], or use[ ], without lawful authority, a means of identification of another person . . . ." A "means of identification" consists of:

> any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any-
>
> (A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien

> registration number, government passport number, employer or taxpayer identification number . . . .

18 U.S.C. § 1028(d)(7).

Additionally, Shabazz has been charged with violating 18 U.S.C. § 514(a)(2), which provides that it is unlawful if a person:

> with the intent to defraud . . . passes, utters, presents, offers, brokers, issues, sells, or attempts or causes the same, or with like intent possesses, within the United States . . . any false or fictitious instrument, document, or other item appearing, representing, purporting, or contriving through scheme or artifice, to be an actual security or other financial instrument issued under the authority of the United States, . . . a State or other political subdivision of the United States, or an organization . . . .

In this case, the government has the burden to prove, *inter alia*, that Shabazz: knowingly possessed five (5) or more false identifications with the intent to use them unlawfully and that the possession was in or affected interstate commerce, *see* 18 U.S.C. § 1028(a)(3); knowingly and unlawfully possessed or used a means of identification of another person, *see* 18 U.S.C. § 1028A(a)(1); and possessed counterfeit checks purporting to be actual, legitimate financial instruments with the intent to defraud and the intent to negotiate the checks, *see* 18 U.S.C. § 514(a)(2). Since intent and knowledge are essential elements of the charges that the government must prove, evidence of prior similar conduct is relevant to show intent since "'as a matter of logic, it is at least marginally more likely that [defendant acted] intentionally if he had previous experience with' the same or similar conduct." *United States v. Staten*, 181 F. App'x 151, 155 (3d Cir. 2006) (quoting *Gov't of Virgin Islands v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992)).

Here, Shabazz's prior possession of false driver's licenses bearing his picture and other individuals' names as well as counterfeit checks was similar, if not identical, to the

conduct charged in the Superseding Indictment. This evidence goes directly to the issues of knowledge and intent. It shows that Shabazz had previous experience with possessing and using false identifications and counterfeit checks with the intent to defraud, and thus had the requisite knowledge and intent to commit the crimes charged in the Superseding Indictment. Therefore, the evidence of prior bad acts is relevant.

### B. Proper Purpose

A proper purpose exists where the evidence is "probative of a material issue other than character." *Green*, 617 F.3d at 250 (quoting *Huddleston v. United States*, 485 U.S. 681, 686 (1988)). This means the evidence "must fit 'into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.'" *Id.* (quoting *United States v. Himmelwright*, 42 F.3d 777, 782 (3d Cir. 1994)). Proper purposes include proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The government contends that Shabazz has previously committed the same acts as charged in the Superseding Indictment in the same manner, with fake driver's licenses bearing Shabazz's photograph and counterfeit checks made out to individuals named on those licenses. It argues that the evidence of Shabazz's prior bad acts is being offered to establish knowledge, intent, and absence of mistake.

It has been determined that the proffered evidence is relevant to show that Shabazz had the knowledge and intent to commit the crimes he is charged with. Intent and knowledge are proper purposes under Rule 404(b). Furthermore, "[w]here intent . . . is an issue in a case, Rule 404(b) evidence is admissible to show whether a defendant's

11

actions were the result of mistake." *Smith v. IMG Worldwide, Inc.*, 2006 WL 3302485 (E.D. Pa. Nov. 9, 2006) (citing *United States v. Ringwalt*, 213 F.Supp.2d 499, 509 (E.D. Pa. 2002)). As intent is an issue in this case, the evidence of Shabazz's prior bad acts are admissible to show that he did not mistakenly or accidentally possess fictitious driver's licenses and counterfeit checks on June 25, 2011. Accordingly, the evidence of prior bad acts is being offered for multiple proper purposes.

### C. Rule 403 Balancing

Even if the proffered evidence is relevant and offered for a proper purpose, it may not be admitted "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Several factors are relevant in the weighing process, including: (1) the need for the evidence in light of the contested issues and the other evidence available to the prosecution, (2) the strength of the evidence, and (3) the danger the evidence will inflame the jury and lead to a decision on an improper basis. *United States v. Sriyuth*, 98 F.3d 739, 748 (3d Cir. 1996) (citing *United States v. Cook*, 538 F.2d 1000, 1003 (3d Cir. 1976)). "[A] significant danger of undue prejudice will be found to exist where there are 'substantial possibilities . . . that a jury will harbor strong adverse sensitivity' to the challenged evidence." *Id.* (quoting *Cook*, 538 F.2d at 1003). "In weighing the probative value of evidence against the dangers . . . in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Johnson*, 199 F.3d 123, 128 (3d Cir. 1999) (internal citations omitted).

12

The government argues that the probative value of the prior bad acts is not outweighed by the danger of unfair prejudice against Shabazz. It also contends that the evidence shows Shabazz engaging in the same criminal behavior in the same way as he is presently charged, making the evidence duly prejudicial instead of unduly prejudicial. Shabazz counters that the government's proffered evidence is highly prejudicial to him and believes that consideration of the incidents in Massachusetts, which he is facing charges for, could prejudice his right to a fair trial in Massachusetts. (Doc. 90 at 4.) He states that he will not contest the admittance of the evidence from Arizona only if the evidence will be present at trial and available for his inspection beforehand. (*Id.*)

The Court is satisfied that the probative value of this evidence is not outweighed by the potential for unfair prejudice. Shabazz does not indicate that the admission of his prior conduct is more prejudicial than probative, merely that it is "highly prejudicial." Many factors contribute to the high probative value of the prior bad acts evidence: the evidence of the bad acts is strong; the similarities between the bad acts and the presently charged crimes are very high; the interval of time between the bad acts and presently charged crimes is relatively brief; and the evidence is needed to prove intent, knowledge, and lack of mistake. The potential for unfair prejudice is low, as it is unlikely that the evidence will inflame the jury and a proper limiting instruction can cure any threat of unfair prejudice.

**D. Limiting Instruction**

The Supreme Court has instructed that a district court must "instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988). Accordingly, this Court will offer limiting instructions both at the time that the evidence is admitted and in

the final jury instructions. *See United States v. Cruz*, 326 F.3d 392, 396 (3d Cir. 2003) ("[T]he district court must meet the fourth requirement for admission of Rule 404(b) evidence by carefully providing the jury with limiting instructions both immediately after [the prior bad act evidence] testimony and also during the jury charge."). The limiting instruction will include the Third Circuit Model Criminal Jury Instruction, which deals with the limited purpose for which the jury may consider Rule 404(b) evidence.

Accordingly, the government's Motion to Admit Evidence Under Federal Rule of Evidence 404(b) will be granted.

## **CONCLUSION**

Because the seizure of the fictitious driver's licenses, counterfeit checks, and laptop computer items from Shabazz's rental vehicle are justified under the plain view doctrine, Shabazz's Motion to Suppress will be denied in part. Because the seizure of the cell phones and wireless internet router from his vehicle are not justified under the plain view doctrine, Shabazz's Motion to Suppress will be granted in part. Because the evidence of Shabazz's prior bad acts is relevant, is offered for several proper purposes, and its probative value is not outweighed by the danger of unfair prejudice to Shabazz, the government's Motion to Admit Evidence Under Federal Rule of Evidence 404(b) will be granted. An appropriate order follows.

October 5, 2012  /s/ A. Richard Caputo
Date  A. Richard Caputo
 United States District Judge

14